## UNITED STATES

v.

## Lawrence ALGERE.

### Crim. A. No. 03–86.

United States District Court,
E.D. Louisiana.

June 23, 2005.

---

8. Because of this finding, I need not address the defense of qualified immunity.

Gary V. Schwabe, Jr., Federal Public Defender, New Orleans, LA, for Lawrence Algere.

Gregory M. Kennedy, U.S. Attorney's Office, New Orleans, LA, for United States.

## ORDER AND REASONS

SARAH S. VANCE, District Judge.

The Court has scheduled a hearing on the government's second motion for authorization to involuntarily medicate defen-

dant Lawrence Algere with anti-psychotic drugs to restore his competency to stand trial. The Court ordered the parties to brief whether the hearing could be held by video teleconference. For the following reasons, the Court finds that conducting the hearing by a video teleconference, during which all participants except the judge are physically present at the same location as Algere, satisfies all applicable rules and constitutional requirements.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 2003, defendant Algere was indicted for a violation of 18 U.S.C. § 922(g), possession of a firearm by a convicted felon. On May 9, 2003, on a joint motion from the government and Algere, the Court appointed a licensed psychologist, Dr. Emily Fallis at the Federal Medical Center at Fort Worth, Texas, to evaluate Algere and provide the Court with a written opinion as to his competency to stand trial and his sanity at the time of the alleged offense.

On September 5, 2003, the resulting written report diagnosed Algere with Schizophrenia, Undifferentiated Type, which is characterized by at least a one-month period in which two or more of the following occur: delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, and negative symptoms (e.g., emotional flattening and poverty of speech). In Dr. Fallis's opinion, Algere was not competent to stand trial. On September 22, 2003, the Court held a competency hearing under 18 U.S.C. §§ 4241 and 4247, at which counsel for the government, counsel for the defense and the defendant were all present. Based on the evidence received, the Court found Algere not competent to stand trial by a prepon-

derance of the evidence and ordered that he be committed to the custody of the Attorney General for treatment under 18 U.S.C. § 4241(d). The Court also ordered that another written opinion as to his competency be prepared after the treatment. Algere was admitted to the Federal Medical Center, Mental Health Department, in Butner, North Carolina.

When Algere was admitted to the FMC, he was not receiving medical treatment for his diagnosed mental health condition. He was physically examined and determined to be healthy with no physical abnormalities other than a sometimes mildly elevated blood pressure. He agreed to take Abilify, an antipsychotic medication on March 24, 2004, but later refused the medication. He also refused to take a different medication. No additional psychiatric medications have been prescribed during his stay at the FMC.

Dr. Carlton Pyant, a licensed psychologist, and Dr. Bruce P. Capehart, a licensed psychiatrist at the FMC, submitted a written report evaluating Algere's condition on August 4, 2004. Pyant and Capehart diagnosed Algere with Schizophrenia, Paranoid Type. Algere was not released to the open population at the FMC because he asserted that he would need to defend himself with violence against threats from staff and other inmates. He is still housed in the single cell, restricted housing unit at the FMC.

■ Because Algere continued to refuse antipsychotic medication on a voluntary basis, on August 19, 2004, the government moved to authorize the FMC to involuntarily medicate Algere with antipsychotic drugs under the Supreme Court's decision in *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003).[1] On

1. *Sell* requires the Court to consider whether

the involuntary administration of anti-psy-

October 14, 2004, the Court denied the government's motion because there was no evidence that the procedures of 28 C.F.R. § 549.43 had been followed. That section requires that the determination of whether it is necessary to forcibly medicate an inmate because he is dangerous to himself or others or to render him competent to stand trial be made in the context of an administrative hearing.[2] The inmate must be given twenty-four hour advance written notice of the hearing and be afforded the right to appear at the hearing, to present evidence, to be represented by a staff member, and to request that witnesses be questioned. 28 C.F.R. § 549.43(a)(2). The administrative hearing was held at the FMC on November 11, 2004 and resulted in an administrative determination that involuntary medication was not warranted on the ground that Algere is dangerous to himself or others at the FMC because he has been safely housed in a single cell in a restricted unit.

On May 2, 2005, the government filed a second motion requesting that the Court order that Algere be involuntarily medicated to render him competent to stand trial.

The Court scheduled a hearing on the government's motion for June 29, 2005 and ordered that the government submit a supplemental report addressing several specific issues regarding the proposed treatment. The Court also raised and ordered the parties to brief whether the hearing could be conducted by video teleconference. At such a hearing, all witnesses and participants, including Algere's counsel and the Assistant United States Attorney, would be present with Algere in the video teleconference room in Quad 1F at the Federal Medical Center in Butner, North Carolina. Only the judge would participate remotely by video teleconference from the video teleconference room at the courthouse in New Orleans. All participants at the FMC would be able to see and hear the judge on a monitor at all times during the hearing. Similarly, the judge would be able to see and hear all participants in the video teleconference room at the FMC on a monitor at all times.

Courts that have held *Sell* hearings since the decision was handed down do not appear to have had the opportunity to

chotic medication to a mentally ill defendant facing serious criminal charges solely in order to render that defendant competent to stand trial violates the defendant's constitutionally protected liberty interest in rejecting medical treatment. *Id.* at 179, 123 S.Ct. 2174. Such treatment is constitutionally authorized only if it "is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.* The Court indicated that this standard requires consideration of four factors: (1) whether important governmental interests are at stake; (2) whether involuntary medication will significantly further those interests; (3) whether involuntary medication is necessary to further those interests; and (4) whether the administration of the drugs is medically appropriate. *Id.* at 180–81, 123 S.Ct. 2174.

2. It appears to be the Bureau of Prisons' position that, after *Sell*, this administrative hearing procedure is no longer valid when the medication is to be administered involuntarily solely for the purposes of restoring competency to stand trial. *See United States v. Barajas–Torres*, No. CRIM.EP–03–CR–2011KC, 2004 WL 1598914, at *1 n. 2 (W.D.Tex. July 1, 2004). The procedure was necessary in this case, however, because there had not been any administrative determination regarding Algere's dangerousness, which *Sell* requires a court to consider before it authorizes involuntary medication on other grounds. 539 U.S. at 181–82, 123 S.Ct. 2174. The determination of an inmate's dangerousness involves prison administration and is better made by prison authorities and medical professionals most familiar with the inmate through frequent and ongoing clinical observation. *See Washington v. Harper*, 494 U.S. 210, 223–34, 231, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).

address the question of a defendant's right to be physically present at a *Sell* hearing, and the Court found no law directly on point. Generally, however, a defendant's right to be present during a criminal proceeding can arise from three sources: 1) the provisions of Rule 43 of the Federal Rules of Criminal Procedure; 2) the Confrontation Clause of the Sixth Amendment; and 3) the Due Process Clause of the Fifth Amendment. *See United States v. Makris*, 398 F.Supp. 507, 509 (S.D.Tex.1975), *aff'd* 535 F.2d 899 (5th Cir.1976). For the following reasons, the Court finds that conducting a *Sell* hearing in which the Court appears by video teleconference is not barred by any of these provisions.

## II. DISCUSSION

### A. Rule 43 of the Federal Rules of Criminal Procedure

Rule 43 of the Federal Rules of Criminal Procedure provides that a defendant "must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing."[3] FED. R. CRIM. P. 43. The Fifth Circuit has interpreted Rule 43's use of the term "present" to mean that the defendant is physically present in the courtroom, in the same location as the judge, for all proceedings to which Rule 43 applies. *United States v. Navarro*, 169 F.3d 228, 236–37 (5th Cir.1999). Thus, Rule 43 would bar video teleconferencing in this case unless an involuntary medication hearing under *Sell* is not a proceeding to which Rule 43 applies. *See id.* at 243 (concluding that sentencing a defendant by video teleconferencing, a proceeding to which Rule 43 specifically and ex-

plicitly applies, does not comply with Rule 43 because the defendant is not "present").

Courts have held that various pre-trial proceedings are not "trial stages" that fall within Rule 43's requirement that the defendant be "present." *See United States v. Burke*, 345 F.3d 416, 421 (6th Cir.2003) (holding that "Rule 43 does not extend to pre-trial motions," including suppression hearings); *United States v. Gradsky*, 434 F.2d 880, 883 (5th Cir.1970) (holding that evidentiary suppression hearing is not subject to Rule 43); *Makris*, 398 F.Supp. at 510 (holding that Rule 43 does not require defendant's presence at a *nunc pro tunc* hearing on his competency to stand trial). In *Burke*, the Sixth Circuit concluded that Rule 43's reference to "trial stages" should be restrictively construed to apply only to proceedings that occur after the work of empaneling the jury begins. *See Burke*, 345 F.3d at 422–23 (concluding, upon review of advisory committee notes to Rule 43 and other authority, that "trial" begins with jury impaneling and ends with the return of a verdict and that Rule 43 does not apply to hearings on a motion made prior to or after those events).

■ The Court finds that Rule 43 does not require that Algere be physically present with the judge in the courtroom during the *Sell* hearing. The hearing is a pre-trial proceeding, much like a suppression hearing, and it occurs before the jury is impaneled. The *Sell* hearing, therefore, is not a "trial stage" that falls under Rule 43. Further, the Court does not find that the Court's participation by video teleconference would affect Algere's ability to aid in his defense. The evidence the Court will consider in ruling on the motion to medi-

---

**3.** A defendant may consent to make an initial appearance by video teleconferencing under Fed.R.Crim.P. 5. FED. R. CRIM. P. 5. A defendant may waive his presence at arraignment

or consent to be arraigned by video teleconference under Fed.R.Crim.P. 10. FED. R. CRIM. P. 10(b), (c).

cate Algere involuntarily under the factors set forth in *Sell* is predominantly medical opinions provided by Algere's doctors regarding the effects of medication and whether it is medically appropriate in Algere's case. These issues are not ones that Algere is in a position to address. *See Gradsky*, 434 F.2d at 883 (finding that defendant's absence from suppression hearing did not violate Rule 43 because hearing's purpose was to allow government witnesses to testify about whether evidence leading to convictions was tainted, a matter on which the defendant had little to contribute). Finally, Algere has already been determined to be mentally incompetent to stand trial, and there has been no reported change in his condition, which renders it unlikely that he will be competent to contribute meaningfully to a determination of the issues at stake in this hearing. To the extent that the Court's observation of Algere will inform its decision on involuntary medication, the Court finds that its opportunity to continuously observe Algere by video teleconference during the hearing is as effective as if Algere were to appear in person before the Court. Therefore, the Court finds its participation in the *Sell* hearing by video teleconference does not violate Rule 43.

## B. The Confrontation Clause of the Sixth Amendment

■ The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Am. VI. "The right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (emphasis in original); *Mancusi v. Stubbs*,

408 U.S. 204, 211, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) (citing *Barber v. Page*, 390 U.S. 719, 725–26, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). It is unclear to what extent the Sixth Amendment right to confront witnesses applies to pre-trial hearings like the one at issue here. *See United States v. Hamilton*, 107 F.3d 499, 506 (7th Cir.1997) (noting that cases addressing confrontation rights in pre-trial proceedings are "few and inconsistent," declining to decide whether the Sixth Amendment applies to a pretrial hearing on defendant's competency to stand trial, and instead finding that admitting telephonic testimony at hearing was harmless error); *Burke*, 345 F.3d at 426 (declining to decide whether fact that video teleconferencing occurred at suppression hearing rather than during trial affected application of Confrontation Clause and finding that defendant's right to confront witnesses against him was not implicated because defendant was physically present with witnesses and only judge was remote). In *Kentucky v. Stincer*, 482 U.S. 730, 740, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987), the Supreme Court recognized that, in the context of a hearing to determine whether witnesses are competent to testify at trial, "[d]istinguishing between a 'trial' and a 'pretrial proceeding' is not particularly helpful." The Court noted that the witness competency hearing at issue in *Stincer* "may well be a 'stage of trial'" to which the Confrontation Clause applies because it was held after the jury was sworn, in the judge's chambers, and in the presence of opposing counsel who asked questions of the witnesses, and it retained "a direct relationship with the trial because it determine[d] whether a key witness will testify." *Id.* at 740–41, 107 S.Ct. 2658. Rather than focusing on whether the proceeding should be characterized as a stage of trial to determine whether confrontation

rights apply, the Court indicated that "it is more useful to consider whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination." *Id.* at 741, 107 S.Ct. 2658; *Makris,* 398 F.Supp. at 510.

■ Here, even assuming *arguendo* that the Confrontation Clause applies to this pre-trial forcible medication hearing, the Court finds that its participation in the hearing by video teleconference will not interfere with Algere's right to confront witnesses against him. Algere will be in the same room as the witnesses, as will Algere's counsel and all other participants in the proceeding. Only the judge will be remote. Under these circumstances, Algere is able to confront the witnesses against him and to participate in their cross-examination, to the extent he is able given his mental status. *See Burke,* 345 F.3d at 425. Accordingly, the Court finds that its presence by video teleconference at the *Sell* hearing does not violate Algere's Confrontation Clause rights.

### C. Due Process Clause of the Fifth Amendment

■ The Supreme Court has held that the Due Process Clause guarantees "that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his absence." *Stincer,* 482 U.S. at 745, 107 S.Ct. 2658 (internal quotation omitted); *Lampton,* 158 F.3d at 255. The Court does not find that its participation in the *Sell* hearing by video teleconference would be so inherently unfair as to violate Algere's right to due process of law under the Fifth Amendment.

■ First, although a defendant has a constitutional right to "have all critical stages of a criminal trial conducted by a person with jurisdiction to preside," *Burke,* 345 F.3d at 424 (citing *Gomez v. United States,* 490 U.S. 858, 876, 109 S.Ct.

2237, 104 L.Ed.2d 923 (1989)), that right is not implicated when the judge appears by video teleconference. Although a judge's actual absence from certain phases of trial can deprive the defendant of the right to a fair trial, the Court has found no cases in which the judge's presence by video teleconference has been found to violate that right. *See id.* at 424–25. The Court finds that its participation by video teleconference does not render the hearing fundamentally unfair.

Second, the Court's participation by video teleconference at a hearing at which Algere is physically present with all other participants in the hearing does not thwart a fair and just hearing. *See id.* at 426 ("Given that [defendant] *was* physically present at the [suppression] hearing, and it was only the judge who was in any sense 'absent,' [defendant's] Fifth Amendment right to be present was not violated."). When a defendant gains the same benefit from the Court's participation by video teleconference as if he were actually present before the Court, his right to a fair hearing is not thwarted. *See Stincer,* 482 U.S. at 745–46, 107 S.Ct. 2658 (concluding that defendant's due process rights were not violated by his exclusion from a hearing on the competency of witnesses who testified against him because defendant "has given no indication that his presence at the competency hearing in this case would have been useful in ensuring a more reliable determination" of the issue presented in the hearing); *United States v. Lampton,* 158 F.3d 251, 255 (5th Cir. 1998) (concluding that defendants' absence from hearing on motion for new trial did not violate due process when defendants' presence could not have assisted in their defense); *Makris,* 398 F.Supp. at 511 (finding that defendant's absence from a hearing on his competency to stand trial did not violate due process because "there

is little the defendant could do or gain by his presence in the rear of the courtroom"). Here, again, it is not Algere who will be absent from the hearing; only the Court would be participating by video teleconference. There is no indication that the Court's physical presence at the hearing would contribute to a more reliable determination on the involuntary medication issue. To the extent that the Court's observation of Algere's behavior and demeanor is important to the determination, which, as noted, is primarily based on expert medical evidence, the Court finds that the video teleconference procedure would provide an equal opportunity for such continuous observation during the hearing. Accordingly, the Court does not find that its presence by video teleconference during the proceeding will violate Algere's right to due process.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that conducting a hearing on the government's motion to involuntarily medicate Algere in which the Court appears by video teleconference and all other participants and witnesses are present in the same place as Algere does not violate any applicable rule or constitutional provision.

Accordingly, the Court ORDERS counsel for the government and for the defense to appear at the video teleconference room in Quad 1F at the Federal Medical Center in Butner, North Carolina at 2:00 p.m. on June 29, 2005. The Court further ORDERS that the parties secure the presence at the FMC of all witnesses who will present testimony at the hearing and ORDERS Algere to be present at the hearing. The government will arrange the video teleconference as follows: all participants at the FMC must be able to see and hear the Court on a monitor in the video teleconference room at the FMC. The Court must be able to observe and hear all participants in the proceedings in the video teleconference room at the FMC at all times. A court reporter will be present in the video teleconference room with the Court in New Orleans to record the proceedings.