*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0473p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RICKY WAYNE SHORT,

       *Petitioner-Appellant,*

   *v.*

UNITED STATES OF AMERICA,

       *Respondent-Appellee.*

No. 05-6520

---

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 02-00062—William J. Haynes, Jr., District Judge.

Argued: October 31, 2006

Decided and Filed: December 28, 2006

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Alan G. Kimbrell, Grover, Missouri, for Appellant. S. Delk Kennedy, Jr., ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Alan G. Kimbrell, Grover, Missouri, for Appellant. S. Delk Kennedy, Jr., ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

## OPINION

---

      RONALD LEE GILMAN, Circuit Judge. Ricky Wayne Short, who pled guilty to a federal drug charge and is currently incarcerated, appeals the denial of his 28 U.S.C. § 2255 motion to vacate his sentence. His attorney negotiated a plea agreement pursuant to which Short's indictment was amended without further action by the grand jury. Short contends that this amounted to constitutionally ineffective assistance of counsel with respect to both the amendment and the plea agreement. The amendment increased the quantity of cocaine alleged in Short's indictment from 500 grams to 5000 grams. Short also argues that the amendment deprived the district court of jurisdiction and gave rise to other constitutional violations.

      In response, the government argues that Short's attorney rendered effective assistance with regard to the plea agreement because Short willingly accepted responsibility for the amended drug charge. The government also asserts that the amendment did not deprive the district court of

1

jurisdiction, and that Short's remaining claims are barred by his plea agreement in which he waived the right to collateral review. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.      Factual background

In August of 2000, law-enforcement officers associated with the Lawrence County (Tennessee) Sheriff's Department executed a search warrant at the residence of Angela Darlene Williams. Present at the home were Williams and her ex-husband Ricky Wayne Short, both of whom were found smoking cocaine at the kitchen table. In the course of the ensuing search, the officers uncovered approximately four kilograms of cocaine in the master bedroom and approximately one kilogram of cocaine on the kitchen floor, along with other drug paraphernalia. A subsequent investigation revealed that, prior to the search, Williams and Charles Lee Furk had traveled to Texas to purchase the cocaine using $115,000 in cash provided by Short. After purchasing the drugs in Texas, Furk and Williams returned with the cocaine to Williams's residence in Tennessee.

Both Williams and Short were arrested at the scene. The report filed by the arresting officers described the quantity of cocaine found in the residence as "approximately 11 pounds," an amount roughly equal to 5 kilograms.

### B.      Procedural background

A federal grand jury issued a four-count indictment in October of 2000, charging that (1) in July and August of 2000, both Short and Furk conspired to distribute "five hundred (500) grams" or more of cocaine; (2) on August 2, 2000, both Short and Furk possessed "five hundred (500) grams" or more of cocaine with the intent to distribute; (3) on October 12, 2000, Furk possessed "a quantity" of cocaine with the intent to distribute; and (4) both Short and Furk, if convicted, would be subject to forfeiture of any real or personal property involved in the commission of the offenses.

Following Short's arrest, his attorney entered into plea negotiations with the government, ultimately arriving at a plea agreement. At Short's change-of-plea hearing before the district court in February of 2001, the government filed a motion to amend Count One of the indictment, the conspiracy count. The motion sought to change Count One from charging Short with conspiring to possess "five hundred (500) grams" or more of cocaine to conspiring to possess "five thousand (5000) grams" or more of cocaine. The text of the motion explained that this amendment was the product of "conversations between counsel" and was "appropriate and necessary to accomplish the negotiated plea agreement to be presented to [the district court]." Only the Assistant U.S. Attorney signed the motion. But when the court asked whether the defense had any objections to the amendment, Short's counsel stated that he did not. The court then orally granted the motion to amend the indictment and issued a written order to that effect later in the day. Following the hearing, however, the court commented to counsel for the government that amending the indictment without seeking reindictment through the grand jury was an atypical procedure.

Under the terms of Short's plea agreement that he signed at the hearing in open court, Short pled guilty to Count One as amended and agreed to certain property forfeitures. He also waived any right to direct or collateral review of his conviction or sentence apart from claims of ineffective assistance of counsel or prosecutorial misconduct. In exchange, the government agreed to drop Counts Two and Three of the indictment and to recommend that Short (1) receive a three-level sentencing reduction due to his acceptance of responsibility, (2) receive care at a medical facility for an existing shoulder injury, (3) participate in a drug-treatment program, and (4) be incarcerated in a facility near his home.

Before accepting Short's guilty plea, the district court explained to him all of the charges in the indictment, including the amended 5000 gram quantity charged under Count One. The court further inquired as to whether Short was competent to enter a plea and whether he was aware of his right to plead not guilty and proceed to trial. After receiving satisfactory answers, the court explained that life in prison was the maximum sentence to which Short could be subject, and Short responded that he understood. The court later asked whether Short was completely satisfied with his attorney's performance, and he responded that he was. Having explained the charges and established Short's competency, the court asked Short how he wanted to plead. Short responded "I want to plead guilty." The court again explained to Short the amended Count One that charged conspiracy to possess and distribute 5000 grams of cocaine, and asked whether Short understood what he was charged with. Short again responded that he did. Nothing in the record, however, indicates that the court specifically informed Short of his right to be reindicted by a grand jury.

The court next questioned Short regarding the circumstances of the drug incident from which the charges arose. Short explained that he had given $100,000 (not the $115,000 alleged by the government) to Furk so that Furk and Williams could purchase "four kilos" of cocaine, but that he had no idea where or how they would acquire the drugs. When asked how much cocaine the pair had brought back, Short responded "I don't really know." The court further inquired why he did not know, and Short responded "I didn't weigh it."

After questioning Short, the district court called F.B.I. Special Agent Utley Noble to give the government's statement of the case. Noble testified regarding both the agreement between Short and Furk to purchase drugs and the execution of the search warrant as described earlier. The record provides no basis for Noble's knowledge of these facts, but Short raised no objection to the testimony on that ground. Noble first testified that the arresting officers discovered "approximately one" kilogram of cocaine on the kitchen floor and that "approximately four kilograms" of cocaine were found in the master bedroom. Noble subsequently testified that "Mr. Ferk [sic] purchased in excess of five kilograms of cocaine" in Texas that he brought back to Tennessee in his truck. Following Noble's testimony, the court asked Short whether he took issue with any of Noble's assertions. Short initially questioned only the location of Furk's truck. He then claimed that he did not recall the kilogram of cocaine allegedly found on the kitchen floor, explaining simply that "I don't remember it being on the floor."

Having heard from the witnesses and accepted Short's plea, the district court ultimately sentenced Short to 120 months in prison, followed by five years of supervised release. The court arrived at this sentence by applying the mandatory minimum required under 21 U.S.C. § 841(b)(1)(A) where the drug quantity involved is 5000 grams or more. Given Short's criminal history category of I and the three-level offense reduction recommended by the plea agreement, the Sentencing Guidelines range for Short's conviction under the amended Count One was between 87 and 108 months of imprisonment. But because this Guidelines range fell below the statutory mandatory minimum of 120 months that the amended charge required, Short's plea agreement provided for an alternate sentence of 120 months, which the district court ultimately imposed.

Short did not directly appeal either his conviction or his sentence. He filed the present motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in June of 2002. Short argued that (1) his counsel rendered ineffective assistance with regard to both the amendment of his indictment and his plea agreement, and (2) the amendment of the indictment deprived the district court of jurisdiction and violated Short's constitutional rights. The district court denied the petition on the grounds that Short had not produced any evidence of his counsel's ineffectiveness, that he had otherwise knowingly and voluntarily waived his right to collateral review under his plea agreement, and that there was an adequate factual basis for his guilty plea. Short then filed a timely notice of appeal. The district court issued a certificate of appealability as to all of the claims raised by Short.

## II. ANALYSIS

### A.      Standard of review and legal framework

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation and quotation marks omitted). Short directs his claims to the first and third categories. He alleges both that his Sixth Amendment right to effective assistance of counsel was violated and that the amendment of his indictment was invalid because it violated his Fifth Amendment right to indictment by a grand jury.

Short waived his right to trial by jury and signed a plea agreement in which he waived his right to collateral and direct review except with regard to claims of ineffective assistance of counsel or prosecutorial misconduct. This court generally enforces such waiver agreements. *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001). Short must establish his ineffective assistance of counsel claim by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Short's additional argument regarding subject matter jurisdiction is also reviewable because subject matter jurisdiction is not subject to waiver. *See United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004).

The district court denied Short's § 2255 motion. We review a district court's denial of a federal prisoner's § 2255 motion to vacate, set aside, or correct a sentence de novo, but will overturn its factual findings only if they are clearly erroneous. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). A claim of ineffective assistance of counsel presents a mixed question of law and fact that we similarly review de novo. *Mallett*, 334 F.3d at 497. De novo review also is also accorded claims regarding subject matter jurisdiction. *Cardinal v. United States*, 954 F.2d 359, 362 (6th Cir. 1992).

### B.      The district court correctly determined that Short's counsel provided constitutionally effective assistance

To establish ineffective assistance of counsel, Short must prove (1) that his trial counsel's representation "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). The Supreme Court subsequently modified *Strickland*'s prejudice prong in the case of a defendant who pleads guilty, holding that such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In evaluating an ineffective-assistance-of-counsel claim, we "strongly presume[]" counsel to have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. As a result, defendants alleging ineffective assistance of counsel bear "a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). A defendant challenging his attorney's conduct during plea bargaining "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty." *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005).

### 1.     *Short's failure to request an evidentiary hearing prevents a meaningful assessment of his attorney's conduct*

Short makes no claim that his attorney advised him to lie to the court or to plead guilty to a charge that he did not commit, or that his attorney failed to advise him of the consequences of accepting the government's plea offer in comparison to the alternatives. Nor does Short allege that his attorney failed to consult him regarding the amendment to the indictment. Rather, Short simply asserts that the evidence does not clearly show that he was, in fact, responsible for five kilograms of cocaine. Short thereby implies that his attorney unreasonably advised him to plead guilty to that charge without making an attempt to learn the true facts.

The limited record contains no evidence regarding what Short's attorney discovered concerning the pertinent facts, or how he specifically advised Short with respect to the plea negotiations. Short did not request an evidentiary hearing before the district court, which would have shed light on these issues, but instead chose to rely on the plea-hearing transcripts as the only evidence to support his § 2255 motion.

Any contention of an inadequate investigation is strongly undermined by Short's own plea colloquy in which he openly accepted responsibility for 5000 grams of cocaine and raised no objection to Agent Noble's characterization of the quantity that Short conspired to purchase as "in excess of five kilograms." Furthermore, Short testified that he had no issues regarding his counsel's performance. Given the strong presumption in favor of an attorney's competence, Short's own admission of the drug quantity, and the testimony of the government witness, Short has not demonstrated by a preponderance of the evidence that his attorney either ignored or failed learn the facts of his case before advising him to plead guilty.

### 2.     *Short's per se ineffective-assistance argument fails*

Rather than stating specific facts regarding his attorney's knowledge or the advice he provided, Short claims to have stated a "prima facie" case for ineffective assistance based on the allegedly unfavorable terms of the plea deal that his attorney negotiated. He argues that because his attorney advised him to accept a plea offer that required him to plead guilty to a more severe charge than that for which he was indicted, and because the three-level reduction offered by the government did not in fact reduce his sentence due to the mandatory minimum prescribed by statute, his attorney's assistance was per se ineffective. This argument requires analysis under the second prong of *Strickland*, which addresses prejudice to the defendant. 466 U.S. at 694.

To demonstrate prejudice, Short must establish "that there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court has held that under certain egregious circumstances, however, a defendant can assert a "per se" ineffective-assistance claim in which the court will presume prejudice. *Hunt v. Mitchell*, 261 F.3d 575, 582 (6th Cir. 2001) (citing *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)). Those circumstances include the actual or constructive denial of assistance "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. In addition, if counsel is burdened by an actual conflict of interest, then a more limited presumption of prejudice applies. *Strickland*, 466 U.S. at 692. The Court in *Cronic* noted that "[a]part from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id*. at 659 n.26.

Short does not argue that his attorney was completely absent or that his attorney was prevented from assisting Short during a critical stage of the proceeding. Furthermore, no authority supports the argument that the acceptance of an allegedly unfavorable plea bargain creates an

additional category of per se ineffective assistance that would relieve him of the burden of demonstrating actual prejudice. *See Craker v. McCotter*, 805 F.2d 538, 542-43 (5th Cir. 1986) (holding that a defendant who, on the advice of his attorney, accepted a 20-year sentence as part of a guilty plea for passing $20 bad check, but who did not allege that he would otherwise have proceeded to trial, did not establish a per se ineffective assistance claim).

Instead, Short raises an alternative argument that the negotiated amendment of his indictment in and of itself violated his Fifth Amendment rights, creating per se prejudice. The Fifth Amendment provides in pertinent part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Supreme Court has recognized that nonconsensual amendments to an indictment other than by a grand jury correspondingly implicate Fifth Amendment rights where the amendment alters the offense charged. *Stirone v. United States*, 361 U.S. 212, 217-218 (1960) (setting aside a conviction because of the trial court's constructive amendment of the indictment). The government does not dispute that Short's indictment was amended by the district court, not by the grand jury.

Certain types of changes, however, fall outside of the prohibition against amending an indictment other than by a grand jury. These include changes that are merely matters of form, *United States v. McGrath*, 558 F.2d 1102, 1105 (2d Cir. 1977), and those that solely serve to narrow the scope of the indictment. *United States v. Miller*, 471 U.S. 130, 145 (1985). As a third exception, the district court in this case certified for appeal the question of whether a defendant can waive his right to reindictment by a grand jury.

Initially, the government argues that it intended from the outset to charge Short with possessing 5000 grams, and that the amendment thus fell under the first exception as simply the correction of a typographical error. The cases cited by the government in this regard, however, involve more innocuous corrections such as altering a defendant's name, *United States v. McGrath*, 558 F.2d 1102, 1104-05 (2d Cir. 1977), or striking a clerical error as surplusage, *United States v. Blum*, 46 F.2d 850, 851 (6th Cir. 1931). Although we doubt whether the amendment in this case—which materially increased the severity of the charge—fits within this narrow exception, we need not decide the issue because we instead rest our decision on the third exception: Short's waiver of his right to be reindicted by a grand jury.

Short invokes substantial historical caselaw for the proposition that "[o]rdinarily, an indictment may be amended only by subsequent action of the grand jury." *United States v. Pandilidis*, 524 F.2d 644, 647 (6th Cir. 1975) (citations omitted). This assertion, however, does not address the precise issue in the present case, which is whether a criminal defendant can effectively waive his right to reindictment by a grand jury. Short addresses the issue of waiver by asserting that he "did not make any statement consenting or agreeing to such an increase [in the indictment charge] or waiv[e] his right to have the matter re[-]presented to a grand jury."

Federal courts in the past did not permit indictments to be amended even with a defendant's consent. *See* B.H. Glenn & C.C. Marvel, Annotation, Power of Court to Make or Permit Amendment of Indictment, 17 A.L.R.3d 1181 § 5 (1968) ("The defendant's consent or acquiescence has been held or recognized not to affect the application of the federal rule that the court is without authority to amend the body of an indictment."). The basis for this rule, however, has been eroded by the advent of modern waiver principles, the enactment of the Federal Rules of Criminal Procedure, and most recently by the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625, 630 (2002) (holding that "defects in an indictment do not deprive a court of its power to adjudicate a case.")

Subsections (a) and (b) of Rule 7 of the Federal Rules of Criminal Procedure, enacted in 1944, provide that a criminal defendant may waive his right to indictment by a grand jury for

noncapital offenses.  *See*, *e.g.*, *Goode v. United States*, 305 F.3d 378, 386 (6th Cir. 2002) (holding that the failure of the indictment to specify a drug quantity implicated a "personal right" that could be waived).  In addition, Rule 7(d) permits the court, on motion by the defendant, to strike portions of an indictment as surplusage.  In so moving, the defendant is deemed to have waived his right to reindictment to the extent of eliminating such surplusage.  *United States v. Johnson*, 585 F. Supp. 80, 81 n.1 (M.D. Tenn. 1984).  Furthermore, other significant rights conferred by the Fifth and Sixth Amendments can be waived by criminal defendants.  *See*, *e.g.*, *Patton v. United States*, 281 U.S. 276, 312 (1930) (trial by jury); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right of counsel); *Trono v. United States*, 199 U.S. 521, 534 (1905) (protection against double jeopardy).

Several courts and commentators have suggested that the principle that a defendant cannot affirmatively waive his right to reindictment by a grand jury is indefensible in light of existing waiver law.  *See United States v. Sazenski*, 833 F.2d 741, 743-44 (8th Cir. 1987) (noting criticism of the rule prohibiting defendants from waiving reindictment by a grand jury, but deciding that the amendment at issue was merely a matter of form); *United States v. Milestone*, 626 F.2d 264, 266-67 & n.2 (3d Cir. 1980) (characterizing the continued viability of the rule prohibiting waiver as "questionable," but determining that the amendment at issue simply deleted surplusage); 1 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 127 (3d ed. 1999) ("[T]here are occasional statements in the cases that an indictment cannot be amended even with the consent of the defendant.  If taken literally these would be indefensible.")

Furthermore, any lingering justification for prohibiting waiver on the theory that indictment issues are jurisdictional and thus beyond the power of the court was eliminated by the Supreme Court's decision in *United States v. Cotton*, which held that a defect in the indictment was not jurisdictional.  535 U.S. at 630-31.  The Court in *Cotton*, however, did not specifically address the issue of waiver except to state that

> *Bain* [121 U.S. 1 (1887)] has been cited in later cases . . . for the proposition that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form."  But in each of these cases, proper objection had been made in the District Court to the sufficiency of the indictment.  We need not retreat from this settled proposition of law decided in *Bain* to say that analysis of that issue in terms of "jurisdiction" was mistaken . . . .

*Id.* at 630 (citations omitted).

In *United States v. Dusenbery*, 78 F. App'x 443, 447 (6th Cir. 2003), this court interpreted the Supreme Court's jurisdictional holding in *Cotton* to mean that a defendant's "right to an indictment, or reindictment, and to an arraignment—may be waived."  *See also United States v. Gaudet*, 81 F.3d 585, 590 (5th Cir. 1996) (accord) (citing *Ornelas v. United States*, 840 F.2d 890, 892 (11th Cir.1988)).  In light of this modern shift in the procedural rules and recent caselaw, we conclude that a defendant may waive his right to reindictment by a grand jury.  We confine this holding, however, to the present circumstance concerning a guilty plea to the amended indictment, and do not address the alternate scenario of a constructive amendment effected during the course of a trial.

We next consider whether Short's plea colloquy effected a valid waiver of his right to reindictment.  The waiver of any constitutional right must be both knowing and voluntary.  *See*, *e.g.*, *Martin v. Rose*, 744 F.2d 1245, 1251 (6th Cir. 1984) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Rule 7(b) of the Federal Rules of Criminal Procedure further provides that the waiver of a defendant's right to indictment by a grand jury must be made by "the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights."  Under Rule 7(b), however, courts have found that a waiver can be implied by a defendant's guilty-plea colloquy in

open court. *Gaudet*, 81 F.3d at 590-91(holding that where a valid indictment has been obtained, "a defendant's decision to plead to a superseding bill of information includes an implicit waiver of indictment that satisfies rule 7(b)"); *Ornelas*, 840 F.2d at 892 (same); *United States v. Travis*, 735 F.2d 1129, 1131-32 (9th Cir. 1984) (same).

The record reflects that the district court asked Short's counsel, in the presence of Short and in open court, whether there was any objection to the amendment of Short's indictment. Short's counsel replied that there was not, and Short himself raised no objection. Furthermore, the court repeatedly explained to Short during the plea colloquy the amended charge to which he was pleading guilty and the penalty it carried. Thus, as the court in *Ornelas* explained, the district court's failure to specifically inform Short of his right to reindictment was, at most, only a "technical violation of Rule 7(b)." *See Ornelas*, 840 F.2d at 892.

The district court thoroughly explained the amended charge to Short before accepting his guilty plea. It also inquired whether he had any objection to the amendment, which he did not. Thus, any technical error related to the amendment of his indictment did not amount to per se prejudice. *See id.* (holding that a technical indictment violation "is not an error that warrants relief pursuant to 28 U.S.C. § 2255"). Instead, the amended indictment negotiated by Short's attorney secured for Short precisely the 10-year sentence that he was willing to accept.

### 3.         *Short cannot demonstrate prejudice under the Strickland/Hill standard*

The Supreme Court has developed a specific standard that defendants who plead guilty must meet to demonstrate prejudice with respect to their representation by counsel. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill*, 474 U.S. at 59. Conversely, in the context of a rejected plea offer, the defendant must show a "reasonable probability that, but for the incompetence of counsel, he would have accepted" the plea. *Turner v. State*, 858 F.2d 1201, 1206 (6th Cir. 1988) (vacated on other grounds).

Short does not argue that there is a reasonable probability that he would have rejected the government's plea offer and gone to trial. He instead contends that, but for his counsel's ineffective assistance, he would have rejected the plea offer and obtained more favorable terms by pleading guilty to all of the charges in the original indictment. This allegation, however, falls short of the *Hill* standard. *See Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (holding that the defendant could not "satisfy the prejudice prong in the absence of any statement that he is actually innocent, or would have gone to trial if his attorney's performance had been different"). Prior to *Hunter*, one unpublished decision of this court granted a defendant's request for an evidentiary hearing to establish whether his attorney's actual conflict of interest prejudiced him by adversely affecting the terms and conditions of the plea and sentence he accepted. *Newman v. United States*, No. 96-6326, 1998 WL 553048, at *3 (6th Cir. August 19, 1998). Short, however, asserts no such conflict of interest here, nor did he request an evidentiary hearing.

This court's holding in *Hunter* is directly on point. Like Short, the defendant in *Hunter* claimed that, with competent counsel, he would have pled guilty to possession of a lower quantity of drugs than he actually admitted to. *Hunter*, 160 F.3d at 1115. The only relevant distinction between Short's claim and the claim in *Hunter* is that the allegedly bad deal that Short accepted included an agreement to amend his indictment to charge a more severe offense. This difference, however, does not distinguish *Hunter* in any meaningful way. In both *Hunter* and in the present case, the petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel. Such a claim is insufficient to establish actual prejudice. *See Hill*, 474 U.S. at 59.

The rationale for finding no prejudice is bolstered by further considering Short's argument that his proposed alternative strategy of pleading guilty to the original charge would have benefitted him. Short argues that, by pleading guilty to the original indictment, he could have taken advantage of the 87-108 month Guidelines range that would have applied but for the 120-month mandatory minimum required by the amended indictment. But this requires us to speculate as to whether the government would have simply brought a superceding indictment had Short not agreed to the amendment of the original indictment. The government, after all, contends that the "500 grams" number was simply a typographical error. Furthermore, if Short had pled guilty to the original charge but still admitted to possessing five kilograms of cocaine, he could have been subject to a Guidelines sentence between 97 and 121 months of imprisonment if the government had recommended only a two-point reduction for acceptance of responsibility under U.S.S.G. §§ 2D1.1 and 5A. Under the *Hill* standard, ineffective assistance claims do not turn on such speculative considerations.

We conclude that Short has not adequately established his ineffective-assistance-of-counsel claim with respect to either *Strickland* prong. In light of the fact that (1) Short did not request an evidentiary hearing and alleges no concrete facts as to his counsel's knowledge or advice, (2) Short's per se ineffective-assistance arguments are unavailing, and (3) Short fails to allege that, with competent counsel, he would have proceeded to trial, Short's ineffective-assistance-of-counsel claim fails on the merits.

**C.     The amendment of Short's indictment did not deprive the district court of subject matter jurisdiction**

In this collateral proceeding, Short faces substantial procedural barriers stemming both from the written waiver of his right to collateral review in his plea agreement and from his failure to raise any such claims at trial. One of Short's claims, however, directly challenges the district court's jurisdiction and is therefore reviewable. *See United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002), for the principle that "subject-matter jurisdiction . . . can never be forfeited or waived").

Short asserts that the allegedly improper amendment of his indictment rendered it void, and thus stripped the district court of its jurisdiction to sentence Short under the amended indictment. The Supreme Court, however, specifically rejected a similar argument in *Cotton*, 535 U.S. at 630, holding that claims of "defects in an indictment do not deprive a court of its power to adjudicate a case." *Cotton* thus made clear that, whatever the effect of a defective indictment, it does not deprive the district court of subject matter jurisdiction. Consequently, Short's jurisdictional argument fails.

**D.     Short waived his remaining arguments through his plea agreement**

Short attempts to raise additional constitutional claims arising from his plea and sentencing apart from his ineffective assistance and jurisdictional arguments. His plea agreement, however, contained a waiver provision that states:

> The defendant knowingly waives the right to challenge the sentence imposed and the manner in which is was determined in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel or prosecutorial misconduct.

This court has held that "plea-agreement waivers of § 2255 rights are generally enforceable." *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001). Consequently, Short has waived his right to pursue these additional claims in a collateral proceeding under § 2255.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.