ALICE M. BATCHELDER, Chief Judge,
concurring in part and dissenting in part.
I agree that the district court did not err in denying habeas relief on nearly all of Sowell’s claims. However, I must respectfully dissent from the portion of the majority opinion affirming the grant of habeas relief on the basis of ineffective assistance of counsel at the penalty phase. On the record before us, we cannot say either that counsel failed to investigate sufficiently, or that counsel pursued a constitutionally deficient mitigation strategy. Sowell has presented fourteen affidavits of family and friends, setting forth testimony about his childhood, his family dynamics, his work history, and his adult life. However, only one of those affidavits — that of Sowell’s father — is of any help to Sowell’s case, and even then, only marginally so.
Sowell’s argument is that counsel did not adequately investigate and therefore could not have made a strategic decision to omit certain mitigating evidence at the sentencing phase. In these types of cases, it is obviously not enough to merely present an affidavit containing testimony that was not introduced during the penalty phase. The testimony must also be useful. See Brooks v. Bagley, 513 F.3d 618, 630 (6th Cir.2008) (rejecting probative value of affidavit that did not specify what new information witnesses would have provided); Martin v. Mitchell, 280 F.3d 594, 614 (6th Cir.2002) (finding no prejudice where “affidavits of [petitioner’s] family members state their willingness to testify at his sentencing but do not show what mitigating evidence would have been presented had they testified”); see also Hill v. *802 Mitchell, 400 F.3d 308, 319 (6th Cir.2005) (“[T]he new evidence that a habeas petitioner presents must differ in a substantial way — in strength and subject matter— from the evidence actually presented at sentencing.”). The affidavit must state that the affiant would have been willing to testify, because otherwise the trial court would never hear the relevant testimony. See Turner v. Romanowski, 409 Fed.Appx. 922, 929 (6th Cir.2011) (“Turner has not produced an affidavit from Ms. Matthews herself indicating that she would be willing to testify on Turner’s behalf----”); Coe v. Bell, 161 F.3d 320, 342 (6th Cir.1998) (rejecting ineffective assistance claim where “most ... witnesses were unavailable or would not cooperate with counsel at the time of pre-trial preparation”). And to show that counsel conducted an inadequate investigation, the affidavit must at least state that counsel never spoke with the affiant. Cf. Goodwin v. Johnson, 632 F.3d 301, 324 (6th Cir.2011) (“The rest of Goodwin’s family — including his mother, his sister, his neighbor, his Mend, and the mother of his child — testified that at no time during the trial did attorneys or investigators try to contact them or ask them to testify on Goodwin’s behalf.”); Morales v. Mitchell, 507 F.3d 916, 932 (6th Cir.2007) (affiants stated that they would have been willing to testify but counsel never contacted them). Without the affiant’s stating that he had not been contacted by counsel, we have no way of knowing if the absence of the testimony was the product of an informed strategic decision by counsel or the result of deficient performance.
The majority opinion glosses over the characteristics of each individual affidavit, describing them collectively with broad, summary language: “Affidavits of fourteen family members and Mends accompanied Sowell’s state post-conviction petition, recounting the violence and privation of So-well’s childhood. Many of these witnesses stated that they would have been available and willing to testify at the penalty phase but had not been asked to do so.” In fact, only eight of the affidavits have anything to say about Sowell’s childhood. Of those, only one offers any helpful testimony and states that counsel never contacted the affiant.
In order to avoid the majority’s error, I will examine the affidavits individually, not as an indistinguishable mass of potential mitigation testimony. Sowell submitted several affidavits from immediate family members: Henderson Sowell, Sr. (father); Henderson Sowell, Jr. (brother); Larry Sowell (brother); and Catherine Jones (sister). He submitted affidavits from his wife and other family members: Lenora Waugh (common law wife); Bobby Lee Horton (great uncle); Helen Sanderful (aunt); Ann Simpson (aunt). He submitted an affidavit from a childhood friend: Kenneth Starks. Lastly, he submitted affidavits from Mends and acquaintances from his adult life: Adam Huntley (employer); Leroy Jones (friend); Jerrell Perrin (neighbor); Jimmy Wilcox (co-worker); and Walter Gabennesh (employer). In all, Sowell submitted fourteen affidavits’ worth of information that counsel was allegedly ineffective for failing to discover. However, very little of it goes towards establishing ineffective assistance of counsel, some of it is not helpful for mitigation, and some of it undercuts his mitigation case.
The only argument Sowell advances, and the only one that has ever gained traction in a federal court, is that counsel was ineffective for failing to investigate and present evidence concerning Sowell’s difficult childhood. Therefore, any testimony presented in the fourteen affidavits regarding Sowell’s adult life is not relevant to Sowell’s claim. Sowell never argues to the contrary. Waugh, Huntley, Leroy Jones, Perrin, Wilcox, and Gabennesh *803 knew Sowell only in his adult life, and their testimony does not shed light on anything new from his childhood, so those affidavits are not valuable.[1]
Of the remaining eight affiants, the only ones to actually state that Sowell’s attorneys never contacted them are his father, Henderson Sowell, Sr., and his aunt, Ann Simpson. None of the others state that counsel never spoke with them.[2] In light of this, the majority opinion’s statement that, “[Cjounsel did not interview any of Sowell’s family members, including his father, brothers, sisters, and other relatives,” is quite an overstatement.
Because the affidavits of the six other relevant affiants are silent on the matter, we cannot assume that trial counsel never spoke with them. This is simply a matter of recognizing where the burden of proof lies — with Sowell, the petitioner. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Fautenberry v. Mitchell, 515 F.3d 614, 634 (6th Cir.2008); Higgins v. Renico, 470 F.3d 624, 632 (6th Cir.2006) (“In essence, a defendant has the burden of proving, by a preponderance of the evidence, that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.” (citation and internal quotation marks omitted)). The silence of the relevant affidavits on whether or not counsel ever spoke to the affiants cannot lead us to assume away Sowell’s burden of proof. Furthermore, counsel’s performance is entitled to “a strong presumption that [it] falls within the wide range of reasonable professional assistance.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Because of this presumption, the burden of proof is heavy. See Short v. United States, 471 F.3d 686, 692 (6th Cir.2006) (“[Defendants alleging ineffective assistance of counsel bear ‘a heavy burden of proof.’ ” (quoting Whiting v. Burt, 395 F.3d 602, 617 (6th Cir.2005))). This presumption means nothing if we automatically assume that counsel did not speak to valuable witnesses, absent evidence to the contrary. Indeed, that would be a presumption that counsel did not perform adequately.
That is especially the case here where we have no testimony, no affidavits, and no records whatsoever from the witnesses best able to speak on the extent of counsel’s investigation: trial counsel themselves.[3] See Carter v. Mitchell, 443 F.3d 517, 531 (6th Cir.2006) (“[C]uriously absent from the record is any statement from trial counsel describing what he did or did not do in investigating [petitioner’s] background. By not detailing trial counsel’s efforts to learn of [petitioner’s] background, [petitioner] has provided no basis for a finding that trial counsel’s investigation was unreasonable.”). True, that is not always required. See Woodard v. Mitchell, 410 Fed.Appx. 869, 875 (6th Cir.2010). But it is “obvious ... that [trial counsel’s] testimony, when available, is preferred.” Id. This Court has never held that a petitioner can establish ineffective assistance by omitting all direct evidence of counsel’s *804 investigation and presenting affidavits from persons who may or may not have been contacted by counsel, setting out their potential testimony that counsel may or may not have known. To allow that is to do away with both the presumption that counsel performed adequately and the petitioner’s burden of proof.
The Court’s holding today provides a roadmap to future habeas petitioners seeking to show ineffective assistance of counsel due to inadequate mitigation investigation. First, the petitioner should present no evidence regarding trial counsel’s investigation. Next, he should submit affidavits from people setting forth any evidence that counsel did not introduce at trial, regardless of whether or not counsel was aware of it, regardless of whether or not counsel spoke with the affiants. Lastly, he must make sure the affiants do not mention whether or not counsel ever spoke to them during the mitigation investigation, or whether or not they were willing to testify at trial. It is that easy. Even if counsel did speak with the affiants but chose not to call them as witnesses, the affiants don’t even have to lie about it— they just have to remain silent on the matter.
I now return to the only two possibly relevant affidavits. Sowell’s aunt, Ann Simpson, would not have provided useful testimony. She stated in her affidavit that, “Billy Joe was a happy go lucky youth. He was always clean and liked to dress in nice clothing.” Also undercutting the image of a chaotic and abusive relationship between his parents, she stated, “Henderson and his wife, Mary Jane, appeared to get along okay.”
This leaves Sowell’s father, Henderson Sowell, Sr., as the only relevant person for whom we have any evidence to say that Sowell’s counsel never contacted him. The testimony the father presents in his affidavit is relatively unremarkable. Most of it concerns Henderson, Sr.’s own life and upbringing. It mentions Henderson’s alcohol use, separation of the family, and the family’s impoverished housing conditions. It does not contain any of the startling and vivid stories from Sowell’s childhood: an infant sibling dying of starvation, rats biting the children, the father’s abandonment of the children, the father’s beating Billy Joe until a neighbor intervened, the father’s sexual molestation of Catherine, and the father’s threatening to burn Catherine to death. Those statements are from either Sowell himself (in his post-sentence interview with Dr. Hawgood) or his siblings. Even given Henderson, Sr.’s statement that, “In 1983, I was not contacted by Billy Joe’s attorneys or their assistants,” the testimony he would have offered to them was of minimal value.
Furthermore, assuming that trial counsel had all of the proffered evidence in front of him, I cannot say that their decision not to put forth testimony about So-well’s childhood was not the product of a strategic decision. I agree with the majority that the two strategies of emphasizing Sowell’s deprived childhood and emphasizing his good character in his adult life are not necessarily incompatible. But as the affidavits submitted by family members make clear, the testimony about his miserable childhood would also include testimony that could harm Sowell’s mitigation case. Each affidavit that included evidence about Sowell’s difficult childhood also mentioned his temper and his violent tendencies. While his difficult childhood would probably paint a more sympathetic picture of Sowell, it would also paint a picture of a man inclined towards violence. The mitigation testimony of Sowell’s friends that counsel did present painted a picture of a kind, generous man, with no mention whatsoever of Sowell’s violent ten *805 dencies. True, the psychological reports mentioned Sowell’s violent tendencies. But it could certainly have been a strategic decision by counsel to have friends give positive testimony about Sowell’s character, while reserving any analysis of his violent tendencies to the expert witnesses. This would emphasize that his violent outburst that resulted in these crimes, while predictable to the experts in psychology and psychiatry, was surprising and out of character to those who knew Sowell best. Pursuing an additional strategy that focused on his difficult upbringing would not be inconsistent, but in this case it would be at great cost because it would bring to light his violent tendencies even more.
The majority dismisses this concern by employing a double standard. The majority minimizes the damaging effect of the testimony about Sowell’s violent tendencies by assuring itself that the psychological reports available to the court at sentencing already “thoroughly documented Sowell’s short temper and his propensity for responding violently to perceived injustices, especially when drinking.” Similarly, the psychological reports briefly documented Sowell’s difficult upbringing.[4] Of course, on these matters, the majority states that testimony from family members would be far more vivid and effective at describing Sowell’s difficult childhood: “These specifics had far more evidentiary power than the abstractions and oblique references contained in the experts’ written reports.” Why would specifics about his violent tendencies not also have “more evidentiary power”? Apparently, the advantage of specific first-hand testimony over psychological reports only works in Sowell’s favor and never against it.
I dissent from the majority opinion’s affirmance of the district court’s grant of relief because a careful examination of the evidence before us reveals that Sowell cannot show either that his counsel undertook an inadequate investigation or that counsel’s choice of mitigation strategy was unreasonable. The majority can only find grounds for relief by failing to examine the affidavits individually, presuming them all to be unequivocally relevant and helpful to Sowell, and presuming that trial counsel did not perform an adequate investigation. As for Sowell’s other arguments for relief that the district court rejected and the majority did not need to address — that counsel should have objected to the presentence investigation report and should have obtained additional experts, challenging an ex parte communication between a trial judge and the probation department, and the trial court’s weighing standard at sentencing — I would deny relief on those claims for substantially the same reasons that the district court did.

. Furthermore, Waugh actually did testify at the sentencing phase.

. Even Larry Sowell, petitioner’s brother, states only that he was not asked to testify. He does not say anything about whether or not counsel ever spoke with him.

. It is also particularly notable that two of these affiants are willing and able to say that they were never contacted by trial counsel and would have been willing to testify if asked, e.g., Henderson Sowell, Sr. Aff., some stated only that they would have been willing to testify, e.g., Larry Sowell Aff., and others say nothing at all on the matter, e.g., Catherine Jones Aff. The most logical interpretation of the affidavits is that, astoundingly, they each mean what they say and not what they do not say.

. “He describes his father as having been a strict disciplinarian.... The family was very poor....” (Walters Report.) “Mother had been good in some ways but a distant person and one who could not be satisfied with her marriage and family and frequently left it....” (Titchener Report.) "[Sowell] feels that there was a lack of close parental nurturance, thus he felt he had a 'rough' childhood .... [H]is early experiences left him feeling abandoned, angry, without significant stable relationships....” (Schmidtgoessling Report.)