NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0743n.06

No. 11-3238

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 10, 2012*

LEONARD GREEN, Clerk

DWIGHT ELMER BROWN,                          )
                                             )          ON APPEAL FROM THE
    *Petitioner-Appellant,*                )          UNITED STATES DISTRICT
                                             )          COURT FOR THE SOUTHERN
v.                                           )          DISTRICT OF OHIO
                                             )
WARDEN, MANSFIELD CORRECTIONAL               )                O P I N I O N
INSTITUTION,                                 )
                                             )
    *Respondent-Appellee.*                )


BEFORE:    COLE and CLAY, Circuit Judges;  MATTICE, District Judge.[*]

MATTICE, District Judge.  Petitioner Dwight Brown appeals from the district court's denial

of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.  Finding no error in

the district court's decision, we affirm.

I.

On May 5, 2006, Brown pleaded guilty to one count of pandering sexually oriented material

involving a minor and two counts of rape, in violation of Ohio Rev. Code Ann. §§ 2907.322 and

2907.02, respectively.  Commensurate with the terms of a jointly filed sentencing recommendation,

the trial court sentenced Brown to five years' imprisonment as to the count of pandering and to

mandatory life prison terms as to each of the rape counts, all to run consecutively to one another.

---

[*] The Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District
of Tennessee, sitting by designation.

Brown appealed his sentences, but after consulting with appellate counsel, he moved to dismiss the appeal based on the appeal waiver provision in his plea agreement with the State. In September 2006, the Ohio Court of Appeals granted Brown's motion and dismissed his appeal.

In August 2007, Brown retained a new attorney and moved to withdraw his guilty plea, asserting that it was entered without effective assistance of counsel. The trial court set the matter for a hearing, at which Brown was permitted to appear via videoconference. The court gave Brown's attorneys the option of appearing in person or, alternatively, appearing with Brown from prison via videoconference. Brown's attorneys elected to appear in person, and they objected to Brown's physical absence. At the hearing, the court heard testimony from Perry Parsons, Brown's trial counsel; Andrew Sanderson, Brown's counsel on his first direct appeal; and David Phillips, III, the Union County prosecutor assigned to Brown's case. On January 22, 2008, with the benefit of the parties' supplemental briefs, the trial court treated Brown's motion as a petition for postconviction relief and denied it.

Brown appealed from the trial court's order denying his motion to withdraw his guilty plea. See State v. Brown, No. 14-08-11, 2008-Ohio-4649, 2008 WL 4193048 (Ohio Ct. App. Sept. 15, 2008). He asserted on appeal that the trial court erred by denying him the right to be physically present and consult with counsel during the hearing on his motion. He also argued that the trial court improperly denied his request to withdraw his guilty plea, in part because his trial counsel and first appellate counsel were ineffective.

The Ohio Court of Appeals affirmed the decision of the trial court. It first determined that Brown's physical presence was not required at the hearing on his motion to withdraw a guilty plea:

2

> The Sixth Amendment to the United States Constitution, Section 10, Article I of the Ohio Constitution, and Crim.R. 43 all deal with the defendant's presence or right to confrontation during their trial or criminal prosecution. However, in the present case, Brown has already been convicted and sentenced following his guilty plea. Since the trial and criminal prosecution have been completed, the Sixth Amendment to the United States Constitution, Section 10, Article I of the Ohio Constitution, and Crim.R. 43 [do] not require the defendant's physical presence at the hearing on his motion to withdraw a guilty plea, nor have we found any Amendments or Criminal Rules that would directly require a criminal defendant's physical presence at a hearing on such a motion.

*Brown*, 2008 WL 4193048, at *3. The court noted that the parties identified no case law establishing a defendant's right to be physically present at a hearing on a motion to withdraw a guilty plea, and it found that Brown was not disadvantaged by his lack of physical presence, especially in view of the fact that his attorneys declined the opportunity to be present with him at the prison during the hearing.

The Ohio Court of Appeals also affirmed the trial court's denial of Brown's motion to withdraw his guilty plea, rejecting Brown's claim that he did not receive effective assistance of counsel. It first concluded that the claim was barred by the doctrine of *res judicata*, but it went on to address the merits of his claim and hold that, even if the claim were not barred, it would still fail, as Brown was unable to establish that either his trial counsel or appellate counsel provided deficient representation. The Ohio Supreme Court declined to accept Brown's subsequent appeal. *State v. Brown*, 900 N.E.2d 624 (Ohio 2009) (unpublished table decision).

On February 4, 2010, in the United States District Court for the Southern District of Ohio, Brown filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In it, he asserted that the trial court impermissibly denied him the right to be present and consult with counsel during

3

the hearing on his motion to withdraw his guilty plea. He further claimed that, because he had been denied the effective assistance of counsel, the trial court erred in denying the motion. A United States Magistrate Judge rejected Brown's arguments and issued a corresponding Report and Recommendation, recommending that the habeas action be dismissed. The district court adopted the Magistrate Judge's Report and Recommendation. However, the court granted a certificate of appealability as to two issues: (1) whether Brown was denied a constitutional right to be present and consult with counsel at the hearing on his motion to withdraw his guilty plea, and (2) whether Brown was denied the effective assistance of trial and appellate counsel.

This appeal followed.

II.

A.    **Standard of Review**

This Court reviews *de novo* a district court's legal conclusions in § 2254 proceedings. *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008). Generally, it employs a clear-error standard in reviewing the district court's factual findings. *Id.* Where the district court does not make independent factual findings, the factual findings are reviewed *de novo. Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006).

Because Brown filed his § 2254 petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's provisions govern this Court's review. *See Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). In *Murphy*, this Court succinctly defined AEDPA's applicable standards:

Under AEDPA, a federal court may grant a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in state court proceedings" if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may also be granted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). A state-court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." [*Williams v. Taylor*, 529 U.S. 362, 405 (2000)]. A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407–08, 120 S. Ct. 1495, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

*Murphy*, 551 F.3d at 493-94 (textual alterations original).

**B.      Physical Presence**

On appeal, Brown first contends that the trial court erred in denying his request to be physically present at the hearing on the motion to withdraw his guilty plea. Brown maintains that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution; Article I, Section 10 of the Ohio constitution; and Ohio Rule of Criminal Procedure 43(A). His claim lacks merit.

At the outset, Brown's substantial reliance on Ohio law is misplaced. When a state-court decision is not based on an unreasonable factual determination, a writ of habeas corpus may only issue under AEDPA when the decision is "contrary to, or involved an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court of the United States*." 28

5

U.S.C. § 2254(d)(1) (emphasis added). Thus, Brown's arguments that the state court's decision ran afoul of the Ohio constitution, Ohio Rule of Criminal Procedure 43, or various Ohio Supreme Court decisions are unavailing – "[a] federal court cannot issue a writ of habeas corpus 'on the basis of a perceived error of state law.'" *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008) (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Consequently, the only cognizable issue in Brown's first claim is whether the state court's decision to prohibit his physical presence at the hearing on his motion to withdraw his guilty plea violates the Sixth Amendment to the United States Constitution, as interpreted by the United States Supreme Court.

A defendant's constitutional right to presence in criminal proceedings "is rooted to a large extent in the Confrontation Clause of the Sixth Amendment." *United States v. Gagnon*, 470 U.S. 522, 526 (1985). In pertinent part, the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "Of the various elements to the confrontation right – 'physical presence, oath, cross-examination, and observation of demeanor by the trier of fact' – physical presence, or a defendant's right to confront the witnesses against him face-to-face, forms 'the core of the values furthered' by the [Confrontation] Clause." *United States v. Burke*, 345 F.3d 416, 425 (6th Cir. 2003) (quoting *Maryland v. Craig*, 497 U.S. 836, 846–47 (1990)).

Even if we were to assume *arguendo* that Brown's presence at the hearing via videoconference was somehow inadequate to meet the dictates of the Sixth Amendment, his argument would still fail. *See Burke*, 345 F.3d at 425–26 ("But the physical confrontation right is not absolute, and alternatives such as video-confrontation may be acceptable where necessary to

further an important policy.") (quotation omitted); *see also Craig*, 497 U.S. at 852 (holding that "use of [a] one-way closed circuit television procedure, where necessary to further an important state interest, does not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause"). Clearly established Confrontation-Clause jurisprudence guarantees a criminal defendant the "right to be present in the courtroom at every stage of his *trial*." *Illinois v. Allen*, 397 U.S. 337, 338 (1970) (emphasis added); *see Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008). This right "exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence." *United States v. Barnwell*, 477 F.3d 844, 852 (6th Cir. 2007) (citation omitted). Notably, "the Supreme Court has repeatedly explained that '[t]he right to confrontation is basically a trial right.'" *Burke*, 345 F.3d at 426 (*quoting Barber v. Page*, 390 U.S. 719, 725 (1968)); *see Kentucky v. Stincer*, 482 U.S. 730, 738 n.9 (1987); *Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987) (plurality opinion); *California v. Green*, 399 U.S. 149, 157 (1970).

In this case, Brown was not physically excluded from any segment of the trial phase of his criminal litigation. Further, his challenged "absence" in no way affected his ability to defend against the charges levied against him. Rather, he had already pleaded guilty to those charges, the trial court had accepted his plea and sentenced him accordingly, and he had dismissed his subsequent direct appeal. At the hearing on the motion to withdraw his plea, Brown's attorneys were present, and Brown was able to participate via videoconference. To the extent that Brown and his attorneys were physically distant or otherwise unable to privately confer, that segregation was of their own volition – the court afforded the attorneys the opportunity to appear remotely beside Brown, but they refused.

Brown has identified no Supreme Court precedent – or, for that matter, precedent from any other federal court – suggesting that the right to be present enshrined in the Confrontation Clause extends to a post-conviction, post-sentence motion to withdraw a guilty plea. The lack of such authority is meaningful: "If [the Supreme Court] has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381; *see* 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011) ("If [AEDPA's] standard is difficult to meet, that is because it was meant to be. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). Because Brown does not contend that the state court's decision is premised on an unreasonable determination of the facts, and because he has identified no clearly established federal law to which the state court's decision ran contrary, pursuant to § 2254(d), this Court cannot grant the habeas relief he now requests.

## C.     Ineffective Assistance of Counsel

Brown next argues that he was denied effective assistance of counsel, both in connection with his guilty plea and on his first direct appeal. We reject both claims.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings. *Strickland v. Washington*, 466 U.S. 668,

684–86 (1984). In *Strickland*, the Supreme Court established a two-part test by which a criminal

defendant's allegations of ineffective assistance of counsel are analyzed:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

When evaluating ineffective-assistance-of-counsel claims, "we 'strongly presume' counsel

to have 'rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment.'" *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006) (alteration

omitted) (quoting *Strickland*, 466 U.S. at 690). A defendant claiming that his attorney provided

deficient representation therefore bears "a heavy burden." *Whiting v. Burt*, 395 F.3d 602, 617 (6th

Cir. 2005). Indeed, "[e]ven under *de novo* review, the standard for judging counsel's representation

is a most deferential one." *Harrington*, 131 S. Ct. at 788. Moreover, under AEDPA, determinations

made in state court must "be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388,

1398 (2011). Taken together, "[e]stablishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."

*Harrington*, 131 S. Ct. at 788 (citations omitted). "When § 2254(d) applies, the question is not

whether counsel's actions were reasonable. The question is whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

9

The Supreme Court has recently reaffirmed that the right to the effective assistance of competent counsel extends to the plea-bargaining process. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). In order to establish a successful ineffective-assistance-of-counsel claim in connection with plea negotiations, the petitioner "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *Short*, 471 F.3d at 692 (quotation omitted). Additionally, to meet *Strickland*'s "prejudice" requirement in the context of the plea-bargain process, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The relevant analysis closely resembles that employed by courts reviewing ineffective-assistance challenges after a conviction at trial, and it may necessarily include a prediction as to the likely outcome had the defendant elected to go to trial. *Id.*

A defendant is also entitled to the effective assistance of counsel in his first appeal as of right. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). As with trial counsel, appellate counsel's performance is judged under the standard articulated in *Strickland*: "it must be shown that counsel's performance was deficient *and* that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable." *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004) (emphasis original) (citing *Strickland*, 466 U.S. at 687). Appellate counsel is not required to raise all nonfrivolous arguments on appeal, but instead is required only "to exercise reasonable professional judgment." *Joshua*, 341 F.3d at 441.

Brown first asserts that his trial counsel was ineffective for failing to conduct a sufficient investigation into the charges against him and for allowing him to plead guilty in the face of evidence insufficient to establish his guilt. To that end, he points to a purportedly exculpatory medical report, and he asserts that counsel was deficient in failing to develop related medical testimony.

We reject Brown's argument that the Ohio Court of Appeals unreasonably determined that his trial counsel's performance was not deficient. The record belies Brown's claim that his attorney failed to conduct an investigation. Trial counsel testified that he met with Brown four times and that each meeting lasted between a half-hour and an hour. Counsel went to the police station and reviewed the transcript of Brown's recorded confession, in which Brown admitted to repeatedly raping his own minor daughter. Counsel viewed video evidence of the crimes with which Brown was charged. Before Brown tendered his guilty plea, he and counsel reviewed the State's discovery material, and counsel advised him of his plea options. Prior to sentencing, Brown's counsel and the prosecutor jointly filed a sentencing recommendation, to which the trial court later adhered. Considering counsel's efforts, it was not unreasonable for the Ohio Court of Appeals to conclude that counsel conducted a sufficient investigation in connection with plea negotiations. While Brown suggests that counsel might have engaged in more extensive preparations, this is not the standard by which ineffective assistance is judged, and it is certainly not the standard applicable under AEDPA. *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S. Ct. at 788; *Strickland*, 466 U.S. at 687.

We also reject the assertion that counsel's purported failure to investigate resulted in prejudice to Brown. Leaving aside that Brown himself made a complete admission of guilt as to the charges against him, attested that his admission was knowing and voluntary, and stated under oath

11

that he was satisfied with trial counsel's representation, his prejudice claim still lacks merit. The Court can find no reasonable basis on which to conclude that, if explored, the medical report to which Brown refers would have induced him to maintain his innocence at trial. The report states that Brown's minor daughter (i.e., the victim of his abuse) showed no physical signs of sexual abuse, and she did not otherwise indicate that Brown had abused her. However, the report also states that over 90% of young women with substantiated cases of sexual abuse have normal or nonspecific physical examinations. It makes reference to the video tapes memorializing Brown's abuse of his daughter, and it recounts a Union County Children's Services report that Brown attempted to put his penis inside his daughter but was unsuccessful because it would not fit. The report relates another portion of a video, in which Brown sexually abuses his daughter while the child's brother is present. Finally, it restates the disclosures Brown's daughter made prior to the recorded examination, which define the nature of certain sexual interactions she had with Brown, including oral-genital contact (victim to offender) and digital-genital contact (offender to victim).

Brown's claim of prejudice is further diminished in the face of the evidence marshaled against him. Brown's trial counsel testified that two video recordings showed Brown sexually abusing his daughter. Additional still images on Brown's computer also depicted apparent minors engaged in sexual behavior, but in exchange for his guilty plea, the State agreed not to prosecute him based on those images. And Brown himself admitted in a recorded confession that he abused his daughter, even going so far as to identify himself and his daughter in one of the video recordings of the abuse. In view of this evidence, the record does not disclose a reasonable probability that, had counsel conducted further investigation, Brown would have refused the prosecution's offer and

demanded a trial. Consequently, Brown cannot establish prejudice arising from trial counsel's alleged failure to conduct a sufficient investigation. *See Hill*, 474 U.S. at 58-59.

Brown argues that counsel was deficient for failing to alert him to the existence of potential defenses to the charges against him, including defenses based on Ohio law and the Fifth Amendment. This argument is without merit. Brown correctly notes that Ohio law requires some evidence of a crime in order to admit a confession. *See, e.g., State v. Kesler,* No. 13-06-09, 2006-Ohio-6340, 2006 WL 3476815, at *7 (Ohio Ct. App. 2006) (citing, *inter alia*, *State v. Van Hook*, 530 N.E. 2d 883 (Ohio 1988)). That requires only a minimal showing, however, and in this case, counsel's testimony clearly identified evidence meeting this requirement: video recordings of Brown raping his minor daughter. *See Van Hook*, 530 N.E.2d at 261. Therefore, the Ohio court reasonably concluded that trial counsel could not be ineffective for failing to inform him that a confession alone is not sufficient evidence of guilt. Likewise, to the extent that Brown relies upon the Fifth Amendment as a means of questioning the viability his confession, he has identified nothing in the record beyond his own contradictory statements in the police interview to support his argument that the confession ran afoul of the Constitution or that his trial attorney was ineffective for failing to pursue such a claim. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . .").

"The decision to plead guilty – first, last, and always – rests with the defendant, not his lawyer." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). In this case, Brown's trial attorney provided sufficient information to ensure that Brown was able to make an informed plea

decision. Nothing suggests that, had counsel performed any differently, Brown would have persisted in demanding a trial. Accordingly, the Ohio Court of Appeals reasonably rejected Brown's claim that his trial counsel was ineffective.

Brown also asserts that his appellate counsel was ineffective, but this claim is unsubstantiated as well. Brown appealed from a conviction based on a plea agreement containing a valid appeal waiver. His appellate counsel discussed the plea agreement with him, advising that persisting in the appeal would void the plea agreement and likely result in the imposition of charges based on the additional images found on his computer. Thereafter, Brown himself signed and filed a request to dismiss his appeal, in which he stated that he had been fully advised of his constitutional and statutory rights. As the state appellate court reasonably determined: "Appellate counsel informed Brown about the consequences of pursuing an appeal, and Brown chose to dismiss his appeal." *Brown*, 2008 WL 4193048, at *8. The conduct of Brown's counsel on appeal was neither unreasonable nor deficient under the circumstances, and consequently, Brown cannot establish that he is entitled to relief pursuant to 28 U.S.C. § 2254.

Because Brown is unable to establish that he is entitled to habeas relief on the merits of his petition, we do not address the State's contention that he has procedurally defaulted on his ineffective-assistance-of-counsel claim.

III.

For the foregoing reasons, we AFFIRM the decision of the district court.

14